CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 07, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BETHEA, | ) | |
| Plaintiff, | ) | Civil Action No. 7:25-cv-00642 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| MS. KENNY, et al., | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Christopher Bethea, a Virginia inmate proceeding *pro se*, filed this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  (Compl., Dkt. No 1).  He raises equal protection and cruel and unusual punishment claims arising from the defendants' alleged denial of certain stimulus payments requested by Bethea.  He seeks compensatory and punitive damages.

Pending before the court is the defendants' motion to dismiss.  (Dkt. No. 14).  The defendants principally argue that there is no cause of action for Bethea's claims under *Bivens* and its progeny.  Bethea responded (Dkt. No. 19) and filed a separate motion for discovery (Dkt. No. 20).  Both motions have been fully briefed and are ripe for review.

For the reasons stated below, the defendants' motion to dismiss will be granted and Bethea's motion for discovery will be denied as moot.

I.   FACTUAL BACKGROUND

Bethea is currently incarcerated at Wallens Ridge State Prison in Big Stone Gap, Virginia.  (Compl. 2, Dkt. No. 1).  Bethea alleges that while incarcerated, he did not receive economic impact payments authorized by the CARES Act.[1]  (*See id.* at 3).  He further alleges

---

[1] "The CARES Act, codified in part at [§] 6428 of the Internal Revenue Code, . . . established a mechanism for the [Internal Revenue Service (IRS)] to issue economic impact payments . . . to eligible individuals."

that the defendants, a "Ms. Kenny," who is an Operations Manager at the IRS, and an unnamed

IRS Supervisor, "denied" him the stimulus payments. (*Id.* at 1–2). According to Bethea, Ms.

Kenny advised him at some point that he had already received the payments, which Bethea

claims is untrue. (*Id.*).

Bethea asserts that the defendants' actions violated his equal protection rights under the

Fourteenth Amendment and constituted cruel and unusual punishment in violation of the Eighth

Amendment. (*Id.* at 3). As to the former claim, Bethea asserts that because other United States

citizens received the stimulus payments and he did not, he has been discriminated against in

violation of the Constitution. (*Id.*).

## II.    DISCUSSION

### A.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's

legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss, a pleading "must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The court need neither accept a

complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted

inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302

(4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual

allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the

light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,

Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

---

*Stevens v. Dep't of Treasury Internal Revenue Serv.*, No. 1:21-cv-01437, 2022 WL 1228769, at *2 (E.D. Cal. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 2110516 (E.D. Cal. June 10, 2022).

2

Pleadings by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

**B.  Bethea's Claims Are Not Cognizable Under *Bivens* and its Progeny.**

> **1.  The framework for determining whether the court should find an implied cause of action**

The defendants principally argue that there is no cause of action for Bethea's claims under *Bivens* and its progeny. (Defs.'s Br. 6–14, Dkt. No. 15). "A person whose constitutional rights have been violated by a state official may bring an action seeking monetary relief under 42 U.S.C. § 1983." *Earle v. Shreves*, 990 F.3d 774, 777 (4th Cir. 2021). "But § 1983 does not provide a cause of action against *federal* officials, and there is no analogous statute imposing damage liability on federal officials." *Id.* (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019)) (emphasis in original). In *Bivens*, the Supreme Court first recognized an implied cause of action for a constitutional violation by federal officers, holding that there was an implied claim for monetary damages available under the Fourth Amendment where the plaintiff alleged that federal officers had searched his apartment and arrested him without a warrant or probable cause and used unreasonable force in doing so. *Tun-Cos*, 922 F.3d at 520 (describing *Bivens*). Since then, the Court extended *Bivens* to other factual situations only in two cases:

> In the first, *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the equal protection component of the Fifth Amendment's Due Process Clause provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. *See id.* at 248–49. And in the second, *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause provided a damages remedy

3

> for the estate of a prisoner who died due to the alleged failure of
> federal jailers to treat his asthma. *See id.* at 19.

*Id.* at 521. The Supreme Court has not recognized a *Bivens*-type remedy outside of those contexts, however, and has repeatedly declined to do so "in *any* additional context." *Id.* (collecting authority) (emphasis in original). Accordingly, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 522 (quoting *Iqbal*, 556 U.S. at 675). *See also Spivey v. Breckon*, 173 F.4th 174, 178 (4th Cir. 2026) (recognizing that "… it is difficult to conceive of when a new *Bivens* claim could be recognized").

In assessing whether a *Bivens* claim may proceed, the Supreme Court "has applied a two-step test." *Goldey v. Fields*, 606 U.S. 942, 944 (2025). At the first step, the court should decide whether the claims arise in "a new *Bivens* context." *Tun-Cos*, 922 F.3d at 522 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 134–40 (2017)). A context is new when "different in a meaningful way" from the three previous *Bivens* cases. *Tate v. Harmon*, 54 F.4th 839, 844 (4th Cir. 2022) (quoting *Ziglar*, 582 U.S. at 139). The *Tate* court emphasized that "'new context' must be understood broadly [and] that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Id.* at 846 (citing *Egbert v. Boule*, 596 U.S. 482, 495 (2022)) (emphasis in original).

"If the context is *not* new . . . then a *Bivens* remedy" is available. *Tun-Cos*, 922 F.3d. at 522–23 (emphasis in original). If the context is new, then the court turns to the second step, which requires it to determine whether "special factors counsel[ ] hesitation" in recognizing an implied cause of action. *Ziglar*, 582 U.S. at 136. In *Egbert*, the court observed that "those [two] steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. Indeed, if "there is *any*

4

rational reason (even one) to think that *Congress* is better suited" to resolve the cost-benefit

analysis of letting a damages action lie, an implied action is precluded. *Id.* at 496 (emphasis in

original). The *Tate* court recognized this conflation of the two steps as well, explaining that "in

*Egbert*, . . . the Court recognized a substantial overlap between the factors relevant to" the two

steps, "often leading to an analysis that addresses just a single question: 'whether there is any

reason to think that Congress might be better equipped to create a damages remedy.'" *Tate*, 54

F.4th at 847–48 (quoting *Egbert*, 596 U.S. at 492).

### 2. Bethea's claims arise in a new context.

Applying this analysis to Bethea's claims, the court has no difficulty in concluding that

they arise in a new context. In *Ziglar*, the Supreme Court noted that "the new-context inquiry is

easily satisfied," 582 U.S. at 149, and identified a non-exhaustive "list of differences that are

meaningful enough to make a given context a new one," such as:

> the rank of the officers involved; the constitutional right at issue; the
> generality or specificity of the official action; the extent of judicial
> guidance as to how an officer should respond to the problem or
> emergency to be confronted; the statutory or other legal mandate
> under which the officer was operating; the risk of disruptive
> intrusion by the Judiciary into the functioning of other branches; or
> the presence of potential special factors that previous *Bivens* cases
> did not consider.

*Id.* at 139-40.

As an initial matter, Bethea's Fourteenth Amendment claim is more properly construed

as a Fifth Amendment claim, as the defendants are federal officials who presumably acted under

color of federal law. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542

n.21 (1987) (explaining that although the Fourteenth Amendment "applies to actions by a State,"

. . . the Fifth Amendment . . . appl[ies] to the Federal Government and contains an equal

protection component."). Regardless, although *Davis* concerned a Fifth Amendment equal

protection claim, it arose in a meaningfully different context than Bethea's claim. *See Hernandez v. Mesa*, 589 U.S. 93, 103 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). "*Davis* concerned alleged sex discrimination on Capitol Hill." *Id.* Bethea's claim, on the other hand, arises out of his alleged non-receipt of COVID-era stimulus payments from the IRS, an agency of the Executive Branch. Moreover, the plaintiff in *Davis* complained of discrimination based on her sex, while Bethea claims that he was treated differently from other United States citizens who had received stimulus payments. Finally, the defendants in this case were presumably operating under the Internal Revenue Code, 26 U.S.C. §§ 1, *et seq.*, a statutory scheme that was not at issue in *Davis*.

As to Bethea's Eighth Amendment claim, it also arose in a meaningfully different context than the prior *Bivens* cases. Although *Carlson* involved an Eighth Amendment claim, that claim was brought by "the estate of a prisoner who died due to the alleged failure of federal jailers to treat his asthma." *Tun-Cos*, 922 F.3d at 521 (citing *Carlson*, 446 U.S. at 19). But the defendants are federal tax officials, not jailers. Moreover, unlike the claim at issue in *Carlson*, Bethea's claim does not involve allegations that the defendants were deliberately indifferent to his medical needs. Instead, he complains that he did not receive stimulus payments and states that this constituted cruel and unusual punishment. And as discussed above, the defendants were likely operating under the Internal Revenue Code, a statutory scheme that was not at issue in *Carlson*.

For these reasons, the court concludes that Bethea's claims arise under meaningfully different contexts than the prior *Bivens* cases.

### 3. Special factors counsel against recognizing an implied cause of action.

As previously explained, once a claim is determined to arise in a new context, then the court should not imply a cause of action if "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (emphasis in original). And as in *Egbert* and *Tate*, the court concludes that there is certainly at least one "rational reason" why Congress would be better equipped than the courts to determine whether to allow Bethea's claims.

First, as in *Tate*, "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" 54 F.4th at 849 (quoting *Egbert*, 596 U.S. at 493). Indeed, Congress's inaction and failure to provide a damages remedy for constitutional violations against federal officials, particularly in the taxation context, suggests that an extension of the remedy should not be judicially created. *See Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 410 (4th Cir. 2003) ("It would be difficult to conceive of a more comprehensive statutory scheme, or one that has received more intense scrutiny from Congress, than the Internal Revenue Code.").

Second, recognizing Bethea's claims would implicate serious separation of powers concerns. Congress has entrusted the Secretary of the Treasury with the administration and enforcement of the Internal Revenue Code, 26 U.S.C. § 7801(a)(1), and has created a presidentially-appointed position in the Commissioner of Internal Revenue who "administer[s], manage[s], conduct[s], direct[s], and supervise[s] the execution and application of internal revenue laws[,]" 26 U.S.C. § 7803(a). IRS employees, such as the defendants, work under the supervision of these officers. *See Donaldson v. United States*, 400 U.S. 517, 534 (1971) ("[T]he Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of

7

the Treasury under [§] 7801(a) of [the Internal Revenue Code].").  Given the critical role the political branches play in the taxation context, extending a *Bivens* remedy could significantly disrupt the exercise of their functions.

Finally, the existence of alternative remedies available to individuals like Bethea strongly cautions against the expansion of *Bivens* into a new context.  *Ziglar*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").  "In constructing [the Internal Revenue Code], 'Congress has given taxpayers all sorts of rights against an overzealous official-dom.'" *Rossotti*, 317 F.3d at 410 (quoting *Cameron v. Internal Revenue Serv.*, 773 F.2d 126, 129 (7th Cir. 1985).  For example, as indicated by an IRS letter Bethea attached to his Complaint, taxpayers "may submit Form 3911 for lost or misplaced refunds."  (Compl. 5, Dkt. No. 1).  Additionally, taxpayers who did not receive the stimulus payments at issue could have obtained an offsetting reduction in their annual tax liability.  *See Rueda v. Yellen*, No. ELH-20-1102, 2022 WL 684143, at *15-16 (D. Md. Mar. 7, 2022) (describing the process).  Moreover, "Congress created the Treasury Inspector General for Tax Administration, an entity separate and distinct from the IRS, with responsibility for investigating allegations of misconduct by IRS employees." *Rossotti*, 317 F.3d at 410-11.  Finally, "Congress has also provided a civil damages action for misconduct by IRS employees in connection with the collection of taxes."  *Id.* at 411 (citing 26 U.S.C. § 7433).[2] Given the availability of these alternative remedies and "the Supreme Court's hesitancy in creating *Bivens* remedies," there is "strong support for the conclusion that no *Bivens* remedy lies

---

[2] Bethea does not refer to § 7433 in his Complaint or any of his filings.  Instead, he brings his claims under *Bivens*.  But if Bethea had brought his claims under § 7433, the court does not see how they would be viable.  This statute authorizes civil damages claims against the United States where an officer or employee of the IRS recklessly, intentionally, or negligently "disregards any provision of [the Internal Revenue Code], or any regulation promulgated under [the Internal Revenue Code][.]"  26 U.S.C. § 7433(a).  Bethea has not identified any violation of the Internal Revenue Code or any related regulation on the defendants' part.  Instead, he identifies alleged violations of the Fifth and Eighth Amendments to the federal Constitution.

in this case." *Id.* at 412. And even if the existing remedies available to Bethea "do not provide complete relief," this is insufficient to justify "the creation of a new judicial remedy for the [alleged] constitutional violation[s] at issue." *Id.* at 411 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983).

For these reasons, the court concludes that special factors counsel against recognizing an implied right of action as to Bethea's claims. Accordingly, the court will grant the defendants' motion to dismiss.[3]

## C.    Bethea's Motion

As noted above, Bethea has filed a motion for discovery which remains pending. Because the court will grant the motion to dismiss, it will deny as moot the motion for discovery.

## III.    CONCLUSION

For the reasons stated in this memorandum opinion, the court will issue an appropriate order granting the defendants' motion to dismiss and denying as moot Bethea's motion for discovery.

Entered: May 7, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

---

[3] Having determined that Bethea's claims may not proceed under *Bivens* and its progeny, the court need not, and will not, address the defendants' other bases for dismissal.

9